IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STATEWIDE BONDING, INC.** | ) | |
| 4085 Chain Bridge Road, Suite 100 | ) | |
| Fairfax, VA, 22030, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| **U.S. DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY ("DHS")** | ) | |
| 245 Murray Lane, SW | ) | |
| Washington, D.C. 20528; and | ) | |
| | ) | |
| **KEVIN MCALEENAN**, in his | ) | |
| individual and official capacity as Acting | ) | |
| Secretary of U.S. Department of | ) | |
| Homeland Security ("DHS") | ) | |
| 245 Murray Lane, SW | ) | |
| Washington, D.C. 20528; | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

Plaintiff files this Complaint and brings this action based on Defendants'

violation of relevant provisions of the Administrative Procedure Act (APA) and

Defendants' violation of Plaintiff's procedural and substantive due process rights

protected by the Fifth Amendment of the U.S. Constitution.

## INTRODUCTION

This case is distinct from the related case of <u>Statewide v. DHS et al.</u>, 1:19-cv-

02083-JEB, because this case deals with two distinct issues:

1. **Bond breach appeals that were mailed <u>before</u> the applicable appeal deadline.** With these appeals, just as described in Statewide v. DHS et al., 1:19-cv-02083-JEB, Defendants continue to unlawfully reject Plaintiff's timely filed bond breach appeals. These appeals, at least 13 in number, were mailed before the deadline prescribed by DHS regulations, and Defendants wrongfully rejected those appeals as untimely, subjecting Plaintiff violations of its due process rights and bond breach invoices totaling approximately $146,000; and

2. **Bond breach appeals that were mailed <u>after</u> the applicable appeal deadline.** These appeals, numbering at least 8, were mailed after the applicable deadline. Defendants rejected those appeals as untimely, but indisputable evidence demonstrates that Defendants accepted a separate (nearly identical) appeal that was also mailed after the applicable deadline and also made under the same facts and legal arguments—and *Defendants resolved that appeal on the merits and in Plaintiff's favor*. These 8 subject rejected appeals resulted in over $78,000 in payment demands as a result of Defendants' arbitrary application of their own regulations.

In both scenarios, Defendants continue to play fast and loose with their own regulations in an effort to financially damage Plaintiff and disrupt their business of assisting immigrants—truly anything goes in this Administration.

### a.  Bond breach appeals that were mailed before the applicable deadline

In a continuation of Defendants' actions as described in related cases, Defendants require that bond breach appeals be submitted by mail. Unlike the federal court system, there is no mechanism for an electronic filing of an appeal and there is no mechanism for a lawyer to hand-file an appeal as may still occur in some courts. Defendants are now refusing to accept Plaintiff's timely submitted appeals—appeals that Plaintiff has mailed by Defendants' prescribed due date—because the United State Postal Service caused those same appeals to arrive past Defendants prescribed due date. The effect on Plaintiff is an imposition by DHS to pay invoices for bond breaches that should be stayed pending Plaintiff's filed appeals, an amount totaling over $146,000 for timely filed appeals and $78,000 for appeals filed out of time.

As this Court well knows, relying on a postmark date to demonstrate timely submission of documents is common practice. Though Defendants are attempting to deny it, this common practice unambiguously forms a part of the DHS regulation in question, 8 C.F.R. § 103.8(b). (See 8 C.F.R. § 103.8(b), signifying that the mailbox rule applies to Plaintiff's appeals by stating "service by mail is complete upon mailing.")

Defendants have engaged in a switch-up game regarding what some refer to as the 'mailbox rule,' wielding it as both shield and sword, to ensure an inequitable outcome that prejudices Plaintiff. For example, Defendants' Form I-

290B Instructions for Notice of Appeal or Motion states: "If we sent you the decision by mail, the "date of service" is the date we mailed the decision, not the date you received it." In making that statement, Defendants cite directly to 8 C.F.R. § 103.8(b), which reads: "Effect of service by mail: whenever a person has the right or is required to do some act within a prescribed period after the service of a notice and the notice is served by mail, 3 days shall be added to the prescribed period. **Service by mail is complete upon mailing."**

Several points need to be made at this juncture:

1. Breach notices were served on Plaintiff by mail, so under 8 C.F.R. § 103.8(b), Plaintiff has 3 additional days to submit its appeals to Defendants;

2.  In addition to having 3 additional days to submit its appeals under 8 C.F.R. § 103.8(b), Plaintiff's service of their appeal upon Defendants is complete upon mailing because the plain language of 8 C.F.R. § 103.8(b) expressly states "service by mail is complete upon mailing";

3. Nowhere in 8 C.F.R. § 103.8(b), or anywhere else in 8 C.F.R. § 103.8, does the statute say that the language "service by mail is complete upon mailing" applies only to Defendants;

4. Defendants do not deny that the 3 day extension of time under 8 C.F.R. § 103.8(b) applies to Plaintiff; thus, Defendants cannot deny that 8 C.F.R. § 103.8(b)'s mandate that "service by mail is complete upon mailing"

also applies to Plaintiff.

Moreover, the governing statutes contain no express language to support Defendants' position that an appeal is submitted only when received by Defendants: "The affected party must **submit** the complete appeal including any supporting brief as indicated in the applicable form instructions within 30 days after service of the decision"—with emphasis on the word <u>submit</u>. 8 C.F.R. § 103.3(a)(2)(i). Indeed, Plaintiff submitted the appeals at issue—by mail within the prescribed due date. The regulatory framework contemplates **submitting** appeals so that *Defendants* can formally file them with the appropriate agency.

13 of Plaintiff's 21 subject appeals were mailed by the 33rd day after the notice of breach date and therefore were timely submitted. Defendants know this, but continue to blatantly violate their own regulations, demonstrative of their foundational problem: DHS believes that because these are DHS regulations, DHS can do as it pleases and make alterations where desired. This misguided and arrogant belief is not how the law works.

**b. Bond breach appeals that were mailed after the applicable deadline**

Defendants' actions further bear the stench of arbitrary and capricious abuse because separately, as distinguished above, 8 of the 21 subject appeals were not mailed before the 33rd day after the notice of breach date, but Defendants absolutely had the discretion to consider these appeals. This is

blatantly evidenced by the fact that Defendants have also *not rejected* a bond breach appeal *using the same legal and factual argument* that was in fact submitted by Plaintiff *after* the 33-day deadline, and said appeal was still considered and favorably resolved in Plaintiff's favor through a bond breach reconsideration. That is, *during the same time frame at issue in this case and under the same <u>Pereira</u>-based legal arguments*, DHS actually considered a late-filed appeal by Plaintiff and still granted Plaintiff's sought relief and *reinstated the bond*. Therefore, Defendants' rejection of 8 of Plaintiff's subject appeals that were in fact mailed after the 33-day deadline are rendered arbitrary and capricious and should not have been rejected.

**c. Defendants' actions continue to harm Plaintiff**

In sum, applying basic rules of statutory construction to the plain language of the regulations in question here demonstrate that the mailbox rule applies to the appeals in question. In addition, Defendants have demonstrated that they arbitrarily apply their own regulations to appeals that were in fact mailed after the deadline, and that they have the discretion to grant appeals that were in fact mailed after the deadline. Defendants' violation of Plaintiff's due process rights is irreparable harm in and of itself. Further, the consequences of Defendants' violation of Plaintiff's due process rights have far-reaching, disproportionate effects, causing severe and irreparable harm by essentially prohibiting Plaintiff's program participants from exercising their last lawful chance at fighting an order

of deportation. Freedom is at stake. As such, Plaintiff requests relief from

Defendants' labeling subject bond breach appeals as untimely filed.

## JURISDICTION AND VENUE

### 1.

This case arises under the Fifth Amendment to the United States

Constitution, the Administrative Procedures Act, and the Declaratory Judgement

Act. The court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331,

2202, 2201, and 5 U.S.C.A. § 702.

### 2.

Personal Jurisdiction is proper because Defendants transact business in

this District and thus are subject to personal jurisdiction in this Court pursuant

to, inter alia, Fed. R. Civ. P. 4.

### 3.

Venue is proper under 28 U.S.C. § 1391 because (1) a substantial part of the

events and omissions giving rise to Plaintiff's claims occurred within this

District and Division and (2) Defendants reside and transact business in this

District and Division.

## STANDING AND EXHAUSTION

### 4.

Standing for this Plaintiff follows the same reasoning found in the related

case: Statewide Bonding Inc., et al v. U.S. Dept. of Homeland Security, et

al., No. 1:18-cv-02115-JEB (D.D.C. 2018). Defendants conduct continues to cause pecuniary and reputational harm to Plaintiff because of the same reasons as explain in said related case. Additionally, and notably, regarding exhaustion of administrative remedies prior to filing in federal court, this Court has noted that exhaustion is not generally required for constitutional claims such as the claims in this case. Second, while it has been established that "'[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants[]'", this is not the case here. Defendants will not stop engaging in conduct that continues to cause economic and reputational harm to Plaintiff, even if Plaintiff appeals Defendants' decision that Plaintiff's appeals were untimely. Further, Plaintiff's rights do not stem from the failure of the government Defendant to perform under a contract; instead, the rights at issue here stem from Defendants' own regulatory framework. And the substantive due process right at issue, in this case, gains substantial force from Defendants' intentional violation of federal law.

## PARTIES

5.

**Plaintiff** Statewide Bonding, Inc. is a bonding company that issues criminal and immigration bonds throughout the United States.

6.

**Defendant** U.S. Department of Homeland Security ("DHS") has

responsibility for enforcing the immigration laws of the United States.

7.

**Defendant** Kevin McAleenan is sued in his individual and official capacity as Acting Secretary of U.S. Department of Homeland Security ("DHS").

**STATEMENT OF FACTS**

**I.     Defendants are ignoring the fact that the mailbox rule is an explicit part of the DHS regulation applicable to this case, 8 C.F.R. § 103.8(b)**

8.

Defendants sent notices of bond breach determinations to Plaintiff through regular mail. Plaintiff was required to respond to the notices of the bond breaches by mail, as Defendants provided no other mechanism for receiving an appeal. Defendants do not have an electronic filing system, nor do they have a physical address to which service may be made by hand filing an appeal.

9.

In the month of May 2019, 13 responsive bond breach appeals were mailed to the U.S. Citizenship and Immigration Services' (USCIS') Administrative Appeals Office (AAO) by the 33rd day after their respective breach notice date, each were sent by trackable US Mail, and each received a tracking number that decisively proves the date that they were in fact mailed.

10.

Defendants are deeming Plaintiff's 13 timely filed bond breach appeals as untimely filed in order to collect on invoices, and have done so for **hundreds of appeals** that Plaintiff has mailed prior to Defendants' prescribed deadline for said appeals.

11.

In this case, at least 13 appeals that were submitted on time by Plaintiff—mailed prior to Defendants' prescribed deadline for said appeals—were rejected by Defendants as being untimely filed—a finding in direct contradiction of DHS regulations. This converted the breach notices that were appealed to being *final agency action* by DHS. DHS is now demanding payment for these 13 bond breaches, despite being timely filed, totaling over $146,000.

12.

In letters between Plaintiff's counsel and Defendants dated July 1, 2019 and July 8, 2019 regarding bond appeals in a related case, Defendants emphasized that "ICE calculates the timeliness of bond breach appeals by following DHS regulations and USCIS instructions."

13.

In fact, in their July 1, 2019 letter, when addressing Plaintiff's contention that the mailbox rule applies, Defendants state: "[t]he Form 1-290B Instructions state that the date of service of the decision is the date it was mailed, not the date

it was received. The date the 1-290B is submitted to the AAO is the date the

USCIS receives it, not the date your office mailed it"; this quoted language **fails**

**to cite all of the relevant language in the I-290B Form, which actually cites to**

**the specific regulation relied on to support Defendants' statement.**

14.

The part of the I-290B Form Instructions for Notice of Appeal or Motion

Defendants are relying upon states the following: "If we sent you the decision by

mail, the "date of service" is the date we mailed the decision, not the date you

received it. **See 8 C.F.R. § 103.8(b)."** This sentence, relied upon by Defendants,

clearly obtains its force from the regulation 8 C.F.R. § 103.8(b).

15.

DHS regulation 8 C.F.R. § 103.8 states, in full, the following: "Effect of

service by mail. Whenever a person has the right or is required to do some act

within a prescribed period after the service of a notice upon him and the notice is

served by mail, 3 days shall be added to the prescribed period. **Service by mail is**

**complete upon mailing**." 8 C.F.R. § 103.8.

16.

With respect to 8 C.F.R. § 103.8(b) language that stating "[w]henever a

person has the right or is required to do some act within a prescribed period after

the service of a notice upon him and the notice is served by mail, 3 days shall be

added to the prescribed period[]", Plaintiff in this case was served the subject

breach notices by mail and is required to respond to those breach notices.

17.

Clearly, 8 C.F.R. § 103.8(b) applies to Plaintiff and thus Plaintiff has an additional 3 days to respond to Defendants' breach notices. Defendants do not deny that 3 days are added to Plaintiff's response period prescribed in 8 C.F.R. § 103.3(a)(2)(i) because they sent notices by mail.

18.

Clearly, 8 C.F.R. § 103.8(b) applies to Plaintiff and thus the service of appeals submitted by mail are considered served upon mailing because the express language of 8 C.F.R. § 103.8(b) says **"[s]ervice by mail is complete upon mailing."** This language is an unambiguous regulatory application of the mailbox rule.

19.

Defendants are attempting to argue that *only the first sentence* of 8 C.F.R. § 103.8(b) ("Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period.") applies to Plaintiff and that, somehow, the last sentence ("Service by mail is complete upon mailing"), is reserved for Defendants.

20.

Nowhere in 8 C.F.R. § 103.8(b), or anywhere else in 8 C.F.R. § 103.8, does

the statute say that the language "service by mail is complete upon mailing"

applies only to Defendants.

21.

To the extent that Defendants would attempt to cite language in their

Board of Immigration Appeals Practice Manual, as if it is actually regulatory

language, *it is not*, articulated by the manual itself, which reads: "**Disclaimer.**

**– This manual does not carry the weight of law or regulation. This manual**

**is not intended, nor should it be construed in any way, as legal advice, nor**

**does it extend or limit the jurisdiction of the Board of established by law**

**and regulation."** <u>See</u> Chapter 1, 1.1(c).

22.

Despite the above disclaimer, Chapter 3.1(a)(i) of the Manual goes on to

attempt to extend Defendants' jurisdiction and deny Plaintiff's due relief by

reading: "For appeals and motions that must be filed with the Board, the appeal

or motion is not deemed "filed" until it is *received* at the Board. **The Board does**

**not observe the 'mailbox rule.'"** *This language directly contradicts the express*

*language of 8 C.F.R. § 103.8(b), which is undoubtedly the regulation that applies*

*to the mailing of Plaintiff's appeals* because, *inter alia*, it is cited in the appeal

instructions relied upon by Defendants' own I-290B Form Instructions on

Appeals of Notices or Motions.

**II.    Defendants are failing to adhere to the express language of regulations relevant to this case, altering as they see fit and prejudicing Plaintiff**

23.

Defendants send out notices about bond breach decisions by mail; when Plaintiff has challenged those mailed decisions on grounds that the decision was not received timely through the mail service, Defendants claim that the date of service with respect to those decisions is the postmark date (not the date received by Plaintiff).

24.

When it comes time for Plaintiff to prove that it submitted an appeal within the allotted timeframe, however, Defendants reverse their stance and claim that Plaintiff is prohibited from proving timely submission of appeals by pointing to the postmark date – this arbitrary reversal demonstrates a seismic abuse of discretion regarding the interpretation of governing statutory language.

25.

On top of the express regulatory language relying on the mailbox rule in 8 C.F.R § 103.3(b), the express language used by 8 C.F.R. § 103.3(a)(2)(i) states that: "the affected party must submit the complete appeal including any supporting brief as indicated in the applicable form instructions within 30 days after service of the decision" – with emphasis on the word <u>submit</u>.

26.

Emphasis is placed on the word <u>submit</u> found within 8 C.F.R. §

103.3(a)(2)(i) because filing the appeals in question is an administrative task

completed by an agency representative of Defendants; Plaintiff does not have the

ability to *file* the appeals, but rather to submit them *for filing by Defendants*.

27.

Defendants prohibit Plaintiff from filing the appeals in question

electronically, either through an ECF style system, direct email, or hand-delivery

to Defendants.

28.

In this case, Plaintiff has adhered to the language of the statutes, as

described above, and submitted the appeals within 33 days.

### III.   Plaintiff has previously provided Defendants with proof of timely submitted appeals regarding other bond breaches

29.

Defendants' tactics are not new. Tracking numbers provided to

Defendants for Plaintiff's appeals regarding bond breaches in <u>Statewide et al. v.</u>

<u>DHS et al.</u>, 1:19-cv-2083-JEB, indicate that the dates of arrival to the post office in

the months of January, February, March, and April 2019 were within 33 days

after Defendants served correlated bond breach notices upon Plaintiff. With

those appeals, Plaintiff took all measures possible to ensure they would be

received by the USCIS in a timely manner, and Plaintiff did the same thing for

all the appeals at issue in this case that were wrongfully deemed *untimely*.

30.

Additionally, to defend against Defendants' claims that Plaintiff's

appeals in a separate case were untimely submitted, Plaintiff provided

Defendants with Form I-797(c)'s, Notice of Action, for the subject bond breach

appeals, communicating USCIS' receipt of Forms I-290B submitted.

31.

The tracking numbers provided to Defendants for those other Statewide

appeals indicated that Plaintiff mailed the appeals within the 33 day deadline.

32.

In the present case, the tracking numbers for each appeal that

was mailed by the 33-day deadline indicate that they were indeed

mailed by the 33-day deadline.

### IV.    Defendants use weird language in trying to escape the reality that 8 C.F.R. § 103.8(b) applies to Plaintiff

33.

In a bizarre twist, Defendants sent a letter stating that the mailbox rule is

a common-law rule usually reserved for contract formations: "[t]he common-

law 'mailbox rule' typically applies when the issue of timely acceptance of an

offer is raised in contract formation disputes. Here, when an administrative

agency has promulgated regulations stating that an appeal must be submitted

within 33 days when the decision being appealed was issued by regular mail, the 'mailbox rule' has no effect."

34.

The entire legal community in the United States of America has a firm grasp on the fact that the mailbox rule is used by governments and courts in a variety of manners that have absolutely nothing to do with 'contract formation disputes.'

35.

In another demonstration of Defendants trying to hone their skills in the art of deception, Defendants state that "[b]ecause the agency has no way of determining when someone placed an AAO appeal in the mail, it can calculate timeliness of filing using the date the agency received the appeal notice – a date that the agency can ascertain for itself." This contention is easily debunked by the known fact that the USPS permits people to track documents with tracking numbers, and also postmarks all mail. And, as established, in a related case Plaintiff provided Defendants with the tracking numbers indicating the date the appeals were delivered to the USPS and showing timeliness—Defendants rejected this sound logic by citing to procedures that have no force of law and contradict their own regulations that were established by rulemaking.

36.

In two separate letters to Plaintiff's counsel dated July 1, 2019 and July 8, 2019, U.S. Immigration and Customs Enforcement (ICE) attempted to wiggle out of granting Plaintiff's client's due process rights by stating that they "lack the discretion" to treat untimely appeals as timely-filed because ICE follows DHS regulations and USCIS instructions. Plaintiff is not asking for discretion, but for DHS to adhere to the applicable, express language of its own regulatory framework.

**V.      Defendants reject Plaintiff's 8 appeals that were filed _after_ the applicable deadline, despite the evidence demonstrating that Defendants have contemporaneously accepted and granted appeals that were filed after the deadline—appeals made with the same legal and factual arguments**

37.

In direct contrast to Defendants' stated position that they lack the discretion to treat untimely appeals as timely-filed, Defendants have actually accepted and *granted* appeals that were mailed after the 33-day deadline— appeals made on the same factual basis and legal grounds (the Supreme Court's <u>Pereira</u> decision), resulting in the reinstatement of those bonds. For example, one bond (not one of the 21 bonds at issue in this case) had a breach notice date of December 20, 2018, and an appeal was mailed on January 29, 2019 (40 days after the notice of appeal and 7 days after the 33-day deadline). That appeal was received on February 5, 2019. On May 13, 2019, ***the bond breach determination was reconsidered on the merits of the appeal and the***

*bond was reinstated*. This is but one example demonstrating that Defendants

are operating in a truly arbitrary manner with no legitimate rhyme or reason.

38.

Because of Defendants' glaring inconsistencies and arbitrary application

of their regulations, payment is now demanded for 8 bond breach appeals

that were filed by Plaintiff after the 33-day deadline: totaling over $78,000.00.

**CAUSES OF ACTION**

**COUNT I**
**Claim for violation of Procedural and Substantive Due Process Clause**
**protected by the**
**5th Amendment of the U.S. Constitution**

39.

Plaintiff hereby incorporates paragraphs 1 through 38, and any other

paragraphs this Court deems relevant, as repeated and realleged as though fully

set forth herein to support this Count.

40.

Based on all the facts of support this Count, Defendants violated Plaintiff's

procedural and substantive due process rights. Defendants' violation of

Plaintiff's due process rights is causing irreparable harm to Plaintiff, Plaintiff's

reputation, and Plaintiff's program participants.

**COUNT II**
**Claim for violation of the Administrative Procedures Act ("APA"), 5 U.S.C §**
**706(2)(C)**

41.

Plaintiff hereby incorporates paragraphs 1 through 38, and any other

paragraphs this Court deems relevant, as repeated and realleged as though fully

set forth herein to support this Count.

42.

Based on all the incorporated facts, Defendants' action of declaring timely

submitted appeals as untimely filed is unlawful, unconstitutional, in excess and

outside of authority, and an abuse of authority, *inter alia*, under the APA.

**COUNT III**
**Claim for Declaratory Relief**
**for violation of the Administrative Procedures Act, 5 U.S.C § 706(2)(C) and for**
**violation of Procedural and Substantive Due Process Rights protected by the**
**Due Process Clause 5th Amendment of the U.S. Constitution**

43.

Plaintiff hereby incorporates paragraphs 1 through 38, and any other

paragraphs this Court deems relevant, as repeated and realleged as though fully

set forth herein to support this Count.

44.

Based on all the incorporated facts, Defendants' action of labeling timely

submitted bonds as untimely filed is unlawful, unconstitutional, in excess of

authority and an abuse of authority, under the APA.

45.

Based on all the incorporated facts, Defendants' actions in attempting to

label timely submitted appeals as untimely filed deprives Plaintiff of its due

process rights under the 5th Amendment to the United States Constitution.

46.

Based on all the incorporated facts, Plaintiff is entitled to declaratory

judgement declaring the Defendants' actions are arbitrary and capricious, in

violation of the APA, and an unconstitutional deprivation of Plaintiff's

procedural and substantive protections under the due process clause of the

United States Constitution.

**COUNT IV**
**Claim for Injunctive Relief**
**for violation of the Administrative Procedures Act, 5 U.S.C § 706(2)(C) and for**
**violation of Procedural and Substantive Due Process Rights protected by the**
**Due Process Clause 5th Amendment of the U.S. Constitution**

47.

Plaintiff hereby incorporates paragraphs 1 through 38, and any other

paragraphs this Court deems relevant, as repeated and realleged as though fully

set forth herein to support this Count.

48.

Based on all the facts to support this Count, Plaintiff seek injunctive relief

to enjoin Defendants from violating its due process rights as set forth in the

factual paragraphs of this Complaint. Defendants' violation of Plaintiff's due

process rights is causing irreparable harm to Plaintiff, Plaintiff's reputation, and

Plaintiff's program participants. Based on the incorporated facts to support this

Count, Plaintiff meets all legal criteria which would permit this Court to grant the requested relief of, *inter alia*, enjoining Defendants from labeling timely submitted appeals as untimely filed. Plaintiff, based on the incorporated facts to support this Count, has a high likelihood of success on the merits, and the injunctive relief sought serves the public interest. The balance of equities also weighs in Plaintiff's favor, and as far as irreparable harm, Plaintiff and Plaintiff's program participants have suffered significantly.

**COUNT V**
**Attorney's Fees**

Based on the foregoing, Plaintiff is entitled to reasonable attorney's fees under all applicable laws, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

**PRAYER FOR RELIEF**

Plaintiff requests that the Court enter a judgment against Defendants and award the following relief:

A.    Order Defendants be enjoined from declaring timely submitted appeals as untimely filed, until the substantive legal issues in this Complaint are resolved;

B.    Enter judgment and declaratory judgment in favor of Plaintiff;

C.    Enter injunctive relief in Plaintiff's favor as prayed for in Plaintiff's Complaint or as this Court deems fit;

D.      Award costs and attorneys' fees to Plaintiff; and

E.      Order all other relief that is just and proper.

Respectfully submitted this 27th day of September 2019,

/s/John M. Shoreman
John M. Shoreman (#407626)

**MCFADDEN & SHOREMAN, LLC**
1050 Connecticut Avenue, NW
Washington, DC 20036
202-772-3188/202-204-8610 FAX
jmshoreman@verizon.net
*Counsel for Plaintiff*